NEAL J. KRATOCHVIL, APPELLANT, V. MOTOR CLUB INSURANCE
ASSOCIATION, ALSO KNOWN AS MOTOR CLUB UNDERWRITERS, INC.,
ALSO KNOWN AS AAA OF NEBRASKA, APPELLEE.

588 N.W. 2d 565

Filed January 22, 1999.    No. S-97-865.

L.J. Karel, of Karel & Seckman, for appellant.

Michael A. England, of Wolfe, Snowden, Hurd, Luers & Ahl, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Neal J. Kratochvil filed an action against his insurer, Motor Club Insurance Association (Motor Club), to recover uninsured motorist benefits provided for in his automobile liability insurance policy. The primary issue on review is whether an insured's claims against an insurer for uninsured motorist benefits are barred by Neb. Rev. Stat. § 44-6413(1)(e) (Reissue 1998) when the cause of action arose prior to passage of the 1994 Uninsured and Underinsured Motorist Insurance Coverage Act (UUMICA), Neb. Rev. Stat. § 44-6401 et seq.

(Reissue 1993 & Cum. Supp. 1994), but was not filed until after the legislation became operative.

## FACTUAL BACKGROUND

On May 15, 1991, Kratochvil suffered personal injuries in an automobile accident with an uninsured motorist. Kratochvil was a passenger in the automobile which was driven by his mother. At the time of the accident, Kratochvil was insured by two automobile liability policies, both of which contained uninsured motorist coverage issued by Motor Club. Within 4 months of the accident, Kratochvil received a $500 payment from Motor Club for ambulance and transportation services rendered to him at the scene of the accident. Kratochvil was also given notice that Motor Club would be unable to pay anything further on his claim.

During this same time period, Kratochvil was also negotiating a settlement for uninsured motorist benefits with his father's insurer. In compliance with Motor Club's policy, Kratochvil contacted Motor Club on December 12, 1991, seeking its consent to a settlement offer from his father's insurer. The purpose of the consent was to avoid exclusion of any future claims Kratochvil may have had against Motor Club. On January 14, 1992, Motor Club informed Kratochvil that its consent was unnecessary to the settlement with his father's insurer. Motor Club explained that its policy required only consent to settlements paid directly under its own policies. Nothing in the record indicates that there was any further communication between the parties until Kratochvil filed this suit.

## PROCEDURAL BACKGROUND

On May 14, 1996, Kratochvil filed suit in the Platte County District Court against Motor Club for uninsured motorist coverage benefits. Motor Club answered Kratochvil's petition and alleged that it was contractually bound to pay Kratochvil only those benefits that he would be " 'legally entitled to recover from the owner or operator of an uninsured motor vehicle.' " Motor Club also alleged that any claim Kratochvil would have against the uninsured driver was barred by Neb. Rev. Stat. § 25-207 (Reissue 1995).

Motor Club filed a motion for summary judgment and alleged that Kratochvil's claim against the uninsured motorist was barred by the statute of limitations pertaining to tort actions and that, therefore, the claim against Motor Club was barred pursuant to § 44-6413(1)(e). A hearing on the motion for summary judgment was held, and on June 30, 1997, the district court sustained Motor Club's motion for summary judgment. The court found that Kratochvil's claim was precluded by § 44-6413(1)(e) because the applicable statute of limitations for Kratochvil's claims against the uninsured driver had expired. The court reasoned that § 44-6413(1)(e) applied because it was the specific statute of limitations in effect at the time Kratochvil's claim was filed.

Kratochvil filed a motion for new trial and alleged that the district court's decision was contrary to law and that the UUMICA should not apply retrospectively to his claim. The district court denied the motion, and Kratochvil thereafter appealed to the Nebraska Court of Appeals. We removed the case to our docket pursuant to our power to regulate the Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Kratochvil contends, rephrased and summarized, that the district court erred in (1) determining that § 44-6413(1)(e) rather than Neb. Rev. Stat. § 60-509.01 (Reissue 1993) governed his claim for uninsured motorist benefits and (2) finding that § 44-6413(1)(e) governed without determining whether a "reasonable time" had been allowed in which to file his claim, as required by due process.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998); *Houghton v. Big Red Keno*, 254 Neb.

81, 574 N.W.2d 494 (1998). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998). In reviewing an order granting a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998).

The determination of which statute of limitations applies is a question of law. *Jorgensen v. State Nat. Bank & Trust, ante* p. 241, 583 N.W.2d 331 (1998); *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997). Similarly, the determination of what constitutes a reasonable time following a legislative shortening of a statutory limitation period is also a question of law. See, e.g., *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984); *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974). In connection with questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Billups v. Troia*, 253 Neb. 295, 570 N.W.2d 706 (1997); *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996).

## ANALYSIS

Before reaching the merits of the case, a brief discussion of the UUMICA is warranted. On April 6, 1994, the Nebraska Legislature passed the UUMICA, which became operative on January 1, 1995, and is codified at § 44-6401 et seq. The UUMICA provides, in pertinent part:

(1) The uninsured and underinsured motorist coverages provided in the Uninsured and Underinsured Motorist Insurance Coverage Act shall not apply to:

. . . .

(e) Bodily injury, sickness, disease, or death of the insured with respect to which the applicable statute of limitations has expired on the insured's claim against the uninsured or underinsured motorist.

§ 44-6413(1)(e). In essence, § 44-6413(1)(e) created a specific limitation period as to when actions against insurers for uninsured motorist benefits could be maintained. Prior to passage of the UUMICA, uninsured motorist coverage was governed by § 60-509.01, which was repealed in 1994 and did not contain any reference to a limitation period.

If § 60-509.01 governs this action, as Kratochvil asserts, then we must determine which limitation period applies. However, if § 44-6413(1)(e) is the governing statute, then Kratochvil's claim would have been time barred upon filing, and we must then determine whether he was allowed a reasonable amount of time in which to file his action. Therefore, the issue before this court is which statute applies when the cause of action in question accrued prior to the passage of the UUMICA but was not filed until after the legislation became operative.

## SUBSTANTIVE VERSUS PROCEDURAL LEGISLATION

In Kratochvil's first assignment of error, he argues that § 60-509.01 is the statute applicable to his claim and that § 44-6413 is inapplicable because his cause of action accrued before the passage of the UUMICA. See § 44-6401 et seq. In turn, Kratochvil argues that because § 60-509.01 did not contain any reference to a limitation period, the general statute of limitations applying to written contracts, Neb. Rev. Stat. § 25-205 (Reissue 1995), should control. Under § 25-205, the statute of limitations would be 5 years from accrual of the cause of action and, consequently, Kratochvil's claim would have been timely filed.

Kratochvil acknowledges that a change in a statute of limitations which alters only the procedural enforcement of those rights operates on all proceedings instituted after its passage, whether the rights accrued before or after that date. However, Kratochvil attempts to support his argument that § 44-6413(1)(e) should not be applied retrospectively to his claim by asserting that it is substantive legislation. Kratochvil argues that the UUMICA, as a whole, was substantive because it involved the enactment of rights, duties, and obligations never before available with regard to uninsured motorist benefits. Kratochvil reasons that because § 44-4613(1)(e) is merely a small portion of

the UUMICA, it cannot be parsed out as separate legislation, and that, therefore, it is also substantive.

In response, Motor Club contends that § 44-6413(1)(e) was merely a procedural legislative change and therefore applied to already accrued causes of action. Any claim that Kratochvil would have had against the uninsured motorist would have been a tort claim. Tort claims are governed by § 25-207, which requires that actions for injuries be brought within 4 years of accrual of the cause of action. Section 44-6413(1)(e) would, therefore, bar Kratochvil's claim because his cause of action would have been filed outside the statute of limitations on his tort claim against the uninsured motorist. Motor Club argues that it is common for legislative acts to affect multiple issues and that, accordingly, the only logical manner to judge whether a particular issue is substantive or procedural is to examine the effect of its application. Motor Club contends that § 44-6413 affects only the remedy whereby uninsured motorist coverage is obtained and should therefore be treated as procedural.

To determine whether § 44-6413(1)(e) should be applied retrospectively to Kratochvil's claim, we must first determine whether § 44-6413(1)(e) is substantive or procedural. This is necessary because legislative acts affecting substantive matters operate only prospectively unless the legislative intent of retrospective operation is clear. See *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995). Contrary to Kratochvil's contention, the UUMICA, however, is not entirely new legislation. While the UUMICA involves some substantive changes in uninsured motorist law, much of the legislation incorporated into the UUMICA is a compilation of previously enacted legislation which has been modified into a more consistent version of the law regarding underinsured and uninsured motorists. See, Neb. Rev. Stat. § 60-571 et seq. (Reissue 1993) (Underinsured Motorist Insurance Coverage Act); Neb. Rev. Stat. §§ 60-509.01 to 60-509.03 (Reissue 1993).

Where a statute has been repealed and substantially reenacted with additions or changes, the additions or changes are treated as amendments effective from the time the new statute goes into effect. *State v. Sundling*, 248 Neb. 732, 538 N.W.2d 749 (1995); *Dairyland Power Co-op v. State Bd. of Equal.*, 238

Neb. 696, 472 N.W.2d 363 (1991); *Denver Wood Products Co. v. Frye*, 202 Neb. 286, 275 N.W.2d 67 (1979). In this instance, § 44-6413(1)(e) is part of a statute that has been repealed and substantially reenacted. See § 60-582. Section 44-6413(1)(e) is therefore treated as an amendment to the uninsured motorist laws.

While it is true that § 44-6413(1)(e) was enacted as part of the UUMICA, that in itself does not entitle it to substantive treatment. Kratochvil's assertion that we must look at the UUMICA as a whole and cannot parse its individual statutes for analysis is incorrect. We have often had to deal with new amendments to existing legislation in order to establish whether the amendment applied retroactively to the case in question. See, *Behrens v. American Stores Packing Co.*, 228 Neb. 18, 421 N.W.2d 12 (1988); *Smith v. Fremont Contract* Carriers, 218 Neb. 652, 358 N.W.2d 211 (1984); *Denver Wood Products Co., supra*; *Oviatt v. Archbishop Bergan Mercy Hospital*, 191 Neb. 224, 214 N.W.2d 490 (1974). The critical question has always turned on whether the amendment was substantive or procedural, not whether the act or new legislation as a whole was substantive or procedural. Procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not. See, *Oviatt, supra*; *Haiar v. Kessler*, 188 Neb. 312, 196 N.W.2d 380 (1972). Accordingly, § 44-6413(1)(e) must be evaluated independently to determine whether it is a substantive or procedural amendment in order to determine whether it is applicable to Kratochvil's claim.

In *Behrens, supra,* we stated that

"a *substantive right* is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. . . . A *procedural right*, on the other hand, is considered to simply be the method by which an *already existing right is exercised*."

228 Neb. at 25, 421 N.W.2d at 17 (quoting *Smith v. Fremont Contract Carriers, supra* (Krivosha, C.J., concurring)). Moreover, "laws prescribing the time within which particular rights may be enforced [generally] relate to remedies only and not substantive rights." *Whitten v. Whitten*, 250 Neb. 210, 212,

548 N.W.2d 338, 340 (1996). Accord *Denver Wood Products Co., supra.*

Section 44-6413(1)(e) does not serve to create or change the right to a remedy for uninsured motorist benefits. Therefore, § 44-6413(1)(e) should not be considered a substantive right, but, rather, a procedural change that merely relates to the remedy. Section 44-6413(1)(e) limits the insured's remedy by limiting the insurer's liability to the period of time during which the insured still has a viable claim against the uninsured motorist. This in essence limits the insured to a torts limitation period for filing a claim on the policy. Statutes of limitations are defined as "such legislative enactments as prescribe the periods within which actions may be brought upon certain claims or *within which certain rights may be enforced.*" (Emphasis supplied.) Black's Law Dictionary 835 (5th ed. 1979). Although § 44-4613 does not prescribe a specific time period in which an insured may bring an action on the policy, it does limit the time in which such a right may be enforced. We therefore determine that § 44-4613(1)(e) operates as a statute of limitations.

Statutes of limitations are generally considered procedural, and legislative changes to limitation periods operate on all proceedings instituted after passage, whether the rights accrued before or after that date. See, e.g., *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994); *Cedars Corp. v. Swoboda*, 210 Neb. 180, 313 N.W.2d 276 (1981); *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979); *Denver Wood Products Co., supra*; *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974). As a legislative change of a procedural limitation period, § 44-6413(1)(e) operates on all proceedings instituted after its passage. *Schendt, supra.*

GENERAL VERSUS SPECIFIC STATUTE OF LIMITATIONS

Motor Club argues that the general statute of limitations for written contracts should not control where a specific limitation on uninsured motorist coverage exists. That is, Motor Club claims that § 44-6413(1)(e) is the applicable statute to Kratochvil's claim because it is a specific statute of limitations and therefore supersedes § 25-205, a general statute of limita-

tions. In this regard, the district court found that § 44-6413(1)(e) controlled because it was specific to uninsured motorist coverage.

Generally, absent a more specific statute, actions on written contracts may be brought within 5 years, pursuant to § 25-205. See, e.g., *Grand Island School Dist. #2, supra.* In the instant case, however, the Nebraska Legislature has directly addressed the limitation on uninsured motorist coverage. See § 44-6413(1)(e). This is significant given our holding that "[a] special statute of limitations controls and takes precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject." *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 278, 481 N.W.2d 422, 426 (1992).

The adoption of § 44-6413(1)(e) makes it clear that the Legislature chose to limit the time period in which a claim could be filed against an insurer, rather than leave it to a generally applicable limitation period. Moreover, it is well settled that it is competent for the Legislature to change statutes prescribing limitations to actions and that the one in force at the time suit is brought is applicable to the cause of action. *Schendt, supra; Grand Island School Dist. #2, supra.* Therefore, § 44-6413(1)(e) should control, since it is a specific expression of the Nebraska Legislature's will concerning uninsured motorist coverage and it was in force at the time Kratochvil brought his action.

## REASONABLE TIME

In Kratochvil's second assignment of error, he argues that even if § 44-6413(1)(e) is procedural and is the applicable statute of limitations, he must be allowed a "reasonable time" in which to bring his action. Kratochvil's assertion is correct. The Legislature may shorten a limitation period for commencement of a cause of action and the change may be made applicable to existing claims, so long as a reasonable time is allowed to bring such action. *Macku v. Drackett Products Co.*, 216 Neb. 176, 343 N.W.2d 58 (1984). More specifically, the Legislature may constitutionally shorten limitation periods fixed by previously existing statutes or establish new limitation periods where none

existed before, provided that such new statutes are not made applicable to existing causes of action in such a way as would preclude any opportunity to bring suit. See, e.g., *Schendt, supra*; *Macku, supra*; *Grand Island School Dist. #2, supra*; *Mammel, O., S., H. & S., Inc., supra*. See 51 Am. Jur. 2d *Limitation of Actions* § 37 (1970 & Cum. Supp. 1998).

The Legislature's power to change limitation periods is subject to two restrictions. First, the Legislature may not deprive a defendant of a bar which has already become complete. Second, the Legislature may not deprive a plaintiff of an already accrued cause of action without providing the plaintiff a reasonable time in which to file the action. *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994); *Macku, supra*; *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979); *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974). With regard to the aforementioned "reasonable time" restriction, there is a constitutional concern that is aptly articulated by the California Court of Appeals:

> The doctrine of retrospectivity of limitations statutes is one of constitutional dimension. In California, statutes of limitations, being procedural, are normally retroactively applied to accrued causes of action; but the court must inquire whether, in a given case, that retrospective application may violate due process by in effect eliminating the plaintiff's right. If the time left to file suit is reasonable, no such constitutional violation occurs, and the statute is applied as enacted. If no time is left, or only an unreasonably short time remains, then the statute cannot be applied at all. . . . Further, the issue is one of law for appellate resolution.

*Aronson v. Superior Court (Matthew A.)*, 191 Cal. App. 3d 294, 297, 236 Cal. Rptr. 347, 349 (1987). See, also, *Schendt, supra*. Therefore, the question before this court is whether Kratochvil was denied due process; that is, whether the time afforded Kratochvil in which to file his claim was "reasonable" in that no such constitutional violation occurred.

"[A] 'reasonable time' for prosecution of a claim must be of sufficient duration to afford full opportunity to resort to the

courts for enforcement of the rights on which the statute of limitations operates." *Macku*, 216 Neb. at 182, 343 N.W.2d at 62. In this case, however, Kratochvil fails to argue why the time period in which he had to file his action was insufficient. He simply asserts that a liberal construction of uninsured motorist law in a case involving serious bodily injury would allow a period of at least 2 years from the effective date of the new legislation in which to file a claim. If we were to entertain that suggestion, however, we would in essence be extending the statute of limitations even beyond what Kratochvil asserts he was entitled to under § 25-205. Moreover, such an act would effectively constitute judicial legislation, which we will not do. See, *Wilson v. Iseminger*, 185 U.S. 55, 22 S. Ct. 573, 46 L. Ed. 804 (1902); *Kendall v. Keith Furnace Co.*, 162 F.2d 1002 (8th Cir. 1947).

In *Mammel, O., S., H. & S., Inc., supra*, we addressed a similar issue in which the statute of limitations for professional negligence was shortened after the cause of action accrued. In *Mammel, O., S., H. & S., Inc., supra*, the new statute of limitations expired prior to the effective date of the legislation. *Id.* In that case, the plaintiff waited an additional 11 months after the effective date of the act before filing his claim. We pointed out that the period of less than 4 months between the passage of the act and its effective date was not an unreasonable period of time to bring an action. *Id.* Here, Kratochvil urges this court to adopt a "reasonable time" of at least 2 years from the effective date of the UUMICA. However, Kratochvil has not alleged any facts that would distinguish his claim from *Mammel, O., S., H. & S., Inc., supra*, to merit such an adoption.

In *Ewing v. State Farm Mut. Auto. Ins. Co.*, 402 So. 2d 779 (La. App. 1981), a Louisiana appellate court addressed a similar situation where the plaintiff had filed a claim after the statute of limitations for uninsured motorist benefits had been shortened by the legislature from 10 years to 2 years. The Louisiana court held that a period of 10 months following enactment to the effective date of the statute allowed a reasonable period of time to permit those persons affected to assert their claims. Likewise, Kratochvil had more than 10 months after passage of the UUMICA until the act became operative. In addition, Kratochvil's claim had not expired upon the operative date of

§ 44-6413(1)(e). Kratochvil had an additional 4½ months before the applicable statute of limitations ran in which to file his claim after the UUMICA became operative. Kratochvil filed this action on May 14, 1996, approximately 25 months after passage and 16½ months after the legislation became operative. Therefore, based on the record in this case, it cannot be said that the time allowed Kratochvil in which to file his claim was so manifestly insufficient that it constituted a denial of justice.

## CONCLUSION

The greater weight of authority supports Motor Club's position that § 44-6413(1)(e) is the applicable statute of limitations to Kratochvil's claim. Kratochvil was afforded a sufficient opportunity to resort to the courts, and the time allowed in which to file his claim was not "unreasonable." We agree with the district court's finding that § 44-6413(1)(e) governed the action because it was a specific statute of limitations and it was in force when the claim was filed. For these reasons, we affirm the judgment of the district court in all respects.

AFFIRMED.

WRIGHT, J., concurring.

I concur in the result because under the language of Kratochvil's policy, Motor Club is not contractually bound to Kratochvil for uninsured motorist coverage benefits. Kratochvil's policy with Motor Club provided that it would pay damages which a covered person "is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury."

In *Carpenter v. Cullan*, 254 Neb. 925, 940, 581 N.W.2d 72, 82 (1998), we explained that where the insured failed to bring an action against the underinsured motorist within the statute of limitations, the insured never attained the status of one "legally entitled to collect," as described in the insured's underinsured motorist policy. See, also, *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981) (defining phrase "legally entitled to recover as damages" to mean insured must be able to establish fault on part of uninsured motorist which gives rise to damages).

Kratochvil suffered personal injuries in an accident with an uninsured motorist on May 15, 1991. Thus, when Kratochvil brought this action against Motor Club on May 14, 1996, his action against the uninsured motorist was barred by the applicable 4-year statute of limitations. For this reason, in accordance with *Carpenter*, Kratochvil failed to qualify as a person "legally entitled to collect" from the uninsured motorist. Therefore, Kratochvil does not have a claim under his policy with Motor Club, and I concur in the result.

CONNOLLY AND MCCORMACK, JJ., join in this concurrence.