RONALD D. MEFFERD, APPELLANT, V. SIELER AND COMPANY, INC., DOING BUSINESS AS CAPRI MOTEL, APPELLEE, AND UNION INSURANCE COMPANY, GARNISHEE-APPELLEE.

676 N.W.2d 22

Filed March 12, 2004.    No. S-02-885.

Rubina S. Khaleel and David J. Feeney, of Copple & Rockey, P.C., and Jim K. McGough for appellant.

Robert W. Shively and Scott E. Tollefsen, of Shively Law Offices, P.C., L.L.O., for garnishee-appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Ronald D. Mefferd was injured when he fell from a balcony at the Capri Motel. Seeking compensation for his injuries, Mefferd filed suit against Sieler and Company, Inc., doing business as Capri Motel (SCI). SCI did not acknowledge or respond to the summons, and Mefferd obtained a default judgment in the amount of $422,872.03. Thereafter, Mefferd instituted garnishment proceedings against SCI's insurer, Union Insurance Company (Union), to collect on the default judgment. On Union's motion for summary judgment, the district court determined that SCI failed to comply with the notice and cooperation provision of the insurance policy and granted summary judgment in favor of Union. Mefferd's appeal requires us to determine whether, as a matter of law, SCI breached the notice and cooperation provision of the policy, and if so, whether Union was prejudiced by the breach.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 1996, Mefferd was injured when he fell from a balcony at the Capri Motel. At that time, Union insured SCI under a commercial lines policy. On January 27, 1997, Union received notice of the incident and LaWayne Nissen, a claims specialist, commenced an investigation into the accident. During his investigation, Nissen learned that at the time of the accident, Mefferd had a blood alcohol content of .230 grams of alcohol per 100 milliliters of blood. In addition, Nissen learned that Mefferd had incurred medical bills in excess of $10,000 and that he had retained the services of legal counsel. Nissen completed his investigation in March 1997, concluding that any claim by Mefferd for

damages would be without merit under Nebraska's comparative negligence statute. At that time, Mefferd had yet to file a claim against SCI. Nissen instructed the manager of the Capri Motel to refer any questions or matters concerning the incident to Union.

On December 1, 1999, Mefferd filed suit against SCI in the district court. On December 2, Barbara Sieler, the president and registered agent of SCI, was served with summons and a copy of Mefferd's petition. SCI failed to respond to the petition, and on February 9, 2000, Mefferd filed a motion for default judgment against SCI. Sieler was served with a copy of Mefferd's motion the same day. SCI failed to contest the motion, and the district court entered an order of default judgment against SCI in the amount of $422,872.03. Thereafter, Sieler received notice of the order of default judgment against SCI.

On September 27, 2000, shortly after the date on which the statute of limitations would have run on Mefferd's claim, Nissen contacted Sieler to confirm that no lawsuit had been filed. Nissen stated that this was his first contact with SCI since the completion of his investigation in March 1997 and that neither he nor Union had any knowledge of Mefferd's suit prior to this telephone call. According to Nissen, it was during this conversation that Sieler informed him of the default judgment against SCI. In response, Nissen stated that he told Sieler that Union was likely to deny coverage because the policy required SCI to notify Union when the suit was filed.

On May 23, 2001, Mefferd instituted garnishment proceedings against Union. Union answered and, subsequently, filed a motion for summary judgment against Mefferd. Essentially, Union argued that SCI failed to comply with certain policy conditions, thereby voiding Union's responsibility to provide insurance coverage to SCI for the accident. Specifically, Union asserted that SCI failed to provide it with notice of the suit and failed to cooperate in the defense of the suit and that said failures prejudiced Union because it was unable to raise, inter alia, Mefferd's contributory negligence as a bar to his claim.

The district court granted summary judgment in favor of Union. The court determined that SCI breached the policy conditions with respect to notice of the suit and cooperation in

defense of the suit and that the breach prejudiced Union. Mefferd filed a timely appeal.

## ASSIGNMENT OF ERROR

Mefferd's sole assignment of error is that the district court erred in granting summary judgment in favor of Union because "genuine issues of material facts existed."

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Controlled Environ. Constr. v. Key Indus. Refrig.*, 266 Neb. 927, 670 N.W.2d 771 (2003).

## ANALYSIS

■ An insurance policy is a contract. *Guerrier v. Mid-Century Ins. Co.*, 266 Neb. 150, 663 N.W.2d 131 (2003). Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute. *Neff Towing Serv. v. United States Fire Ins. Co.*, 264 Neb. 846, 652 N.W.2d 604 (2002).

At issue here is Union's claim that SCI breached the notice and cooperation provision of the policy. The disputed provision states, in relevant part:

**Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . . .

**2. Duties In The Event Of Occurrence, Offence, Claim or Suit.**

. . . .

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

. . . .

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit". . . .

As defined in the policy, "[s]uit means a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged."

■ The parties agree that an insurer cannot assert a breach of a policy's notice and cooperation provision as a policy defense in the absence of a showing of prejudice or detriment to the insurer. See *MFA Mutual Ins. Co. v. Sailors*, 180 Neb. 201, 141 N.W.2d 846 (1966). Accord, *Wright v. Farmers Mut. of Neb.*, 266 Neb. 802, 669 N.W.2d 462 (2003); *Herman Bros. v. Great West Cas. Co.*, 255 Neb. 88, 582 N.W.2d 328 (1998); *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Pupkes v. Sailors*, 183 Neb. 784, 164 N.W.2d 441 (1969). Therefore, in order to be entitled to summary judgment, Union was required to establish, as a matter of law, that (1) SCI breached the policy's notice and cooperation provision and (2) said breach prejudiced Union.

## BREACH

■ Mefferd's main argument on appeal is that a genuine issue of material fact exists as to whether SCI notified Union of Mefferd's lawsuit. As it did in the district court, Union argues that SCI breached the notice and cooperation provision of the policy because it failed to notify Union that a suit had been filed and to forward the legal papers that had been served upon it. A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Controlled Environ. Constr. v. Key Indus. Refrig.*, 266 Neb. 927, 670 N.W.2d 771 (2003). Nissen's deposition testimony, if uncontroverted, would establish that SCI breached the notice and cooperation provision of the policy by failing to notify

Union that Mefferd had filed suit and to forward copies of the legal papers served upon SCI. For example, Nissen stated that his conversation with Sieler on September 27, 2000, had been his first contact with Sieler or any other representative of SCI since he finished his investigation in March 1997. In addition, Nissen stated that neither he nor Union had any knowledge of Mefferd's suit prior to when he called Sieler on September 27. Moreover, Nissen's file memorandum, dated March 1, 2001, confirms the substance of his deposition testimony, i.e., that SCI failed to notify Union of the suit and that Union had no knowledge of the suit prior to Nissen's conversation with Sieler on September 27. Union established its prima facie case.

After the movant makes a prima facie case for summary judgment, the burden to produce evidence showing the existence of a material issue of fact that prevents summary judgment as a matter of law shifts to the party opposing the motion. *Id.* We conclude that Mefferd failed to rebut the prima facie case established by Union and, therefore, no genuine issue of material fact exists as to whether SCI notified Union that Mefferd had filed suit.

Mefferd's sole evidence that SCI notified Union of the suit is Sieler's deposition testimony. Specifically, Mefferd points to Sieler's statement, during recross, that she could not remember the exact timeframe of a conversation she had had with a Union representative in which they discussed Mefferd's suit, i.e., whether the conversation took place before or after she received notice of the court's order of default judgment. It is Mefferd's contention that this statement creates a factual issue as to whether Union received timely notice of the suit.

We conclude that Sieler's statement is insufficient to create a genuine issue of a material fact. Sieler's statement is simply a piece of equivocal testimony, which, because of its uncertainty, does not stand contrary to Nissen's assertion that neither he nor Union had notice of the suit prior to his conversation with Sieler. See *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997) (conclusions based upon guess, speculation, conjecture, or choice of possibilities do not create material issues of fact for purposes of summary judgment).

Moreover, the remainder of Sieler's deposition testimony makes it clear that the conversation Sieler remembers having with

a Union official was actually the conversation she had had with Nissen on September 27, 2000, after the order of default judgment had been entered. First, Sieler stated that the conversation took place because a Union official contacted her. Second, Sieler stated that her only conversation with a Union official was when she told the official that she had received notice that a default judgment had been entered against SCI. Third, Sieler stated that during this conversation, the Union representative told her that "the time that [Union] could do something was over." These facts corroborate Nissen's deposition testimony that (1) his only contact with Sieler was when he called her on September 27; (2) during this conversation, Sieler informed him that a default judgment against SCI had been entered; and (3) upon learning that a default judgment had been entered, the Union representative told Sieler that Union was likely to deny coverage for failing to notify it of the suit.

Furthermore, a review of Sieler's deposition testimony shows that Sieler had originally, and unequivocally, stated that she failed to notify Union of the lawsuit prior to receiving notice that a default judgment had been entered.

[Counsel]: So, from the time you were served a copy of the lawsuit until the time you received a notice that a judgment had been entered, you didn't notify anybody at the insurance company that the lawsuit had been filed; is that correct?

[Sieler]: That's correct.

[Counsel]: And you didn't tell anyone at the insurance agent's agency that the lawsuit had been filed at any time prior to receiving notice that a judgment had been entered; is that correct?

[Sieler]: That's correct.

Simply put, what Mefferd contends has created a contested issue of material fact has, at best, merely served to call Sieler's testimony into question. Moreover, when placed in the context of Sieler's entire deposition testimony, the statement serves only to buttress Nissen's recollection of events. We conclude that the statement is insufficient to create a genuine issue of material fact.

Contrary to Mefferd's assertion, Nissen's preliminary investigation on behalf of Union does not alter this result. During his investigation, Nissen learned that Mefferd had sustained medical

expenses of over $10,000 and was represented by counsel. However, such knowledge is not tantamount to knowing that a suit had been filed, nor does it alter the duty the policy placed on SCI to notify Union when a "suit" was filed. Under the policy, "suit" was defined as "a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged." Therefore, by merely providing notice of the initial incident or occurrence, SCI did not comply with the policy. See *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998) (noting difference between notice of incident and notice that suit had been filed).

### PREJUDICE

As stated above, in order for Union to assert a breach of the notice and cooperation provision as a defense, it must prove that the breach resulted in prejudice or detriment. See *MFA Mutual Ins. Co. v. Sailors*, 180 Neb. 201, 141 N.W.2d 846 (1966). Union argues that it was prejudiced because SCI's failure to notify Union of the suit deprived it of the opportunity to (1) raise Mefferd's contributory negligence as a bar to his claim and (2) attack alleged inconsistencies in the testimony presented at the hearing on the motion for default judgment.

We have stated that prejudice is established by examining whether the insurer received notice in time to meaningfully protect its interests. *Herman Bros. v. Great West Cas. Co.*, 255 Neb. 88, 582 N.W.2d 328 (1998). See, also, *Deprez v. Continental Western Ins. Co.*, 255 Neb. 381, 584 N.W.2d 805 (1998). Obviously, SCI's failure to notify Union of Mefferd's suit until after a default judgment had been entered prevented Union from protecting its interests. As noted elsewhere:

> [I]t would be difficult to conceive of greater prejudice, and of a confiscatory result being reached, than a demand for payment of a default judgment of which a defendant is totally ignorant, and which, through the failure of the assured to comply with the terms of the contract and forward the process and pleadings to the insurer, it has been deprived of its right to defend the action.

*Hallman v. Marquette Casualty Company*, 149 So. 2d 131, 135 (La. App. 1963). Thus, it is clear that SCI's inaction prejudiced Union as a matter of law.

### ARGUED BUT NOT ASSIGNED

Mefferd also argues that the district court erred by (1) construing the notice and cooperation provision as a condition precedent to coverage and (2) failing to recognize that the policy does not adequately explain when an insured must provide notice of a suit because neither the policy nor industry standard defines the phrase "as soon as practicable." Mefferd, however, failed to assign the court's alleged misinterpretations as error, and therefore, his arguments are not appropriate for appellate review. See *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000) (errors argued but not assigned are not appropriate for appellate review).

### CONCLUSION

Because there is no genuine issue of material fact as to SCI's failure to notify Union of Mefferd's suit or the resulting prejudice upon Union, the district court's grant of summary judgment in favor of Union is affirmed.

AFFIRMED.